ever, for reviewing any ruling of the court upon the trial, save by exception and subsequent appeal. There was no more authority for entering an order on the ruling of the court made at the opening of the case than there would have been on a ruling made either in the exclusion of evidence, or in the charge to the jury on the same subject. The so-called ruling or order of the court was a mere expression of opinion, which in no wise can control any subsequent trial. As to the future, it is a mere nullity, but the plaintiff cannot raise this objection, as the order seems to have been entered at his request. The cases cited by the plaintiff are not in point. In People v. Carson, 78 Hun, 544, 29 N. Y. Supp. 619, there was no ruling on the trial, but the court refused to allow the cause to proceed to trial, and struck it from the calendar. This action of the court violated a substantial right of the plaintiff, for he must go to trial before there could be any judgment rendered in the action from which he could appeal. It was therefore justly the subject of review, either by appeal or by mandamus, and no question as to the propriety of the remedy appears to have been raised. In Schoonmaker v. Blass, 88 Hun, 179, 34 N. Y. Supp. 424, the order appealed from granted an amendment to the pleadings, and such amendment was not made as upon trial, for the cause was put over the term. Such an order was unquestionably the subject of direct review.

The appeal should be dismissed, but, as we regard the order appealed from as a nullity, there should be no costs of this appeal. All concur.

---

BROWN v. BUFFALO, R. & P. R. CO.

(Supreme Court. Appellate Division, Fourth Department. April, 1896.)

1. RAILROAD COMPANIES—FIRES FROM PASSING ENGINES—NEGLIGENCE.
    To charge defendant with negligence in so operating its trains as to set fire to plaintiff's adjacent premises, plaintiff must show specifically the negligent act which caused the injuries.
2. SAME—FAILURE TO REMOVE GRASS FROM RIGHT OF WAY.
    Whether a railroad company was negligent in not removing from its right of way weeds and grass which had been mown and left there during a dry summer month, and in which a fire started from sparks from an engine, is for the jury.

Appeal from circuit court.

Action by Thomas Brown against the Buffalo, Rochester & Pittsburgh Railroad Company. From a judgment in favor of defendant, and from an order denying a motion for a new trial on the minutes, plaintiff appeals. Reversed.

Action to recover for the alleged negligence of the defendant in operating its engines along its track which passed adjacent to the farm of the plaintiff in Scottsville. The complaint alleges that the defendant negligently operated its engines over its tracks, and negligently forced large quantities of live coals from its engines, "and did negligently permit and allow quantities of dried grass and weeds to accumulate upon said tracks, and did negligently set fire to the same, and did negligently permit and allow said fires to extend to plaintiff's lands and cause the damage and destruction to property of plaintiff." At the close of plaintiff's evidence defend-

ant moved for a nonsuit "on the ground that the plaintiff has not shown facts sufficient to constitute a cause of action and on the ground that there are no facts in this case upon which to predicate the charge of negligence on the part of the defendant." The motion was granted, and the plaintiff took an exception. Thereupon the plaintiff asked to go to the jury on the question whether the defendant "was negligent in running engines which threw coals a distance of fifty feet from the tracks, which set fires that destroyed a .portion of the property in this case." The motion was denied, and an exception was taken. Thereupon the plaintiff asked to go to the jury on the question whether "defendant was negligent in permitting grass to die down and accumulate upon its tracks. or cutting it and leaving it to remain upon the tracks, so that fire might be communicated by it to the plaintiff's premises." The motion was denied, and an exception was taken. The plaintiff also asked the court to submit the case to the jury "upon the question of fact whether or not, in view of all the circumstances proven in this case, defendant was negligent in the starting of those fires." The motion was denied, and an exception was taken. A motion for a new trial on the minutes was made and denied.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, WARD, and GREEN, JJ.

J. E. Robson, for appellant.

H. G. Danforth, for respondent.

HARDIN, P. J. It was incumbent upon the plaintiff to point out specifically the negligence, or negligent act, of the defendant in operating its trains along its track, and that such negligence caused the injuries of which the plaintiff complained. It was not sufficient to produce evidence to indicate that sparks emitted from the smokestack of defendant's locomotives occasioned the fire, unless the emission of the sparks was unusual in degree or character, or the sparks were of extraordinary size, and such as would not be emitted from perfectly constructed locomotives. McCaig v. Railway Co., 8 Hun, 599. The evidence was not definite and certain to indicate any particular engine from which the fire escaped. The grade was ascending adjacent to the plaintiff's lands, and it was to be expected that some sparks, in the reasonable use of the defendant's engines, would escape. Frier v. Canal Co., 86, Hun, 464, 33 N. Y. Supp. 886. In Miller v. Railroad Co. (Sup.) 36 N. Y. Supp. 719, it was said:

"It may be, as alleged in the complaint, that sparks emitted from the engine were thrown upon the plaintiff's premises, and caused the fire. But if, as we must assume here, the engine was perfect, that would not of itself establish negligence."

In Flinn v. Railroad Co., 142 N. Y. 11, 36 N. E. 1046, it was said that a railroad company may not be made liable "for the unavoidable or usual consequences to adjacent property of the proper operation of its road." And in that case it was further held that "the defendant could not be charged with negligence in not fully introducing a new system of arresting sparks upon all of its engines previous to the fire, in the absence of evidence that it was reasonably practicable and possible so.to do."

2. It is claimed there was some evidence of the defendant's negligence in its omission to cut the grass and weeds and remove the débris from the railroad premises, and that by reason of such omission and negligent acts of the defendant a fire started on the prem- .

ises of the defendant, and communicated to the premises of the
plaintiff and caused damages; and that, whether such was the fact
or not, was a question for the jury to determine. In support of such
contention the appellant calls our attention to the evidence of Ed-
ward S. Brown, at folio 93. He said that he remembered the sum-
mer of 1893, the months of June, July, and August of that year,
and that it was a dry season. "The defendant's track adjoining our
premises was very dry. There was grass on it. The grass was
dry. I don't know whether it had been cut or not. I think it had,
but I would not be positive. Fires occurred there in July." The
witness continues:

"On July 22d we had two fires. The first occurred about ten o'clock. I
saw it start. It started on the railroad side of the fence, in whatever was
there to ignite the grass or weeds. It burned east away from the track.
The wind was blowing west quite hard that morning. It burned ten acres
of hay stubble, two tons of hay, and two shade trees, and extended over
about a quarter of a mile. We had fourteen of our own men there that
morning, and the railroad section men were there."

The witness Carver testifies that he saw fires on the plaintiff's
premises in 1893, in the month of July. And he adds:

"I saw the fire of July 22d in the morning. The condition of the railroad
bed along the Brown farm at that time was very dry. The weeds and
grass were very dry. The weeds had been cut by the track men, and they
lay along the side of the railroad track between that and the fence, and in
places where there wasn't as much they left the grass standing, and cut
close like, and they mowed that where the grass was, and where there was
some weeds they would clip them. I observed this in July of 1893. This
fire started up near the top of the hill. My men came there, and tried to
get it under control, and just managed to keep it from the buildings, and it
burned through to the highway. It had burned on the railroad side of the
fence, between the track and the fence, and of course it had run out and
through the lot."

This witness further testified:

"There was some grass and weeds on the railroad bed, and occasionally
some willows above the crossing, and by Mr. Brown's. * * * The road-
way on each side of the track, between the track and the fence, is covered
with sod. * * * This railroad runs by the Brown farm, on an embank-
ment from three to five feet high. The Brown farm runs up from the
hill. I think the men had been through that year, cutting the weeds and
grass, about July 1st. It was pretty dry in June and July of that year, and
the grass and rubbish was very dry; just as dry on the railroad as on the
Brown farm. Some of this grass on the railroad at the time of these
fires was probably a foot to a foot and a half high. It would be that, some
of it, at any time. In the winter or spring, in places, some of it wouldn't
be more than three inches high. I mean at this time of year—at the time
the ground was burned—there was something there besides old dry grass.
It would stand up in some places a foot and a half high. In some places
it would be quite thick and in some places quite thin. Along there where
these fires started, in some places it was heavier and in some places lighter.
* * * The grass that had been cut was left lying where they cut it. I
saw three of the fires; two occurring in the forenoon and one in the after-
noon."

On his recross-examination he said that some one had cut the
grass and weeds in July.

"I couldn't make an estimate of how much grass you could have collected
along the easterly side of the roadway along the Brown farm, if you had

gone over it with a rake; I don't know how much there would be; it would make a good ordinary load if it was all raked up; there was some of the weeds and hay lying in swaths as the counsel had called it; it lay there some of it burned."

And further on in his testimony he says:

"I thought there was a load or more of grass I saw cut along the Brown premises."

The witness McGuire says that he was present at the fire of July 22d, and that he observed the condition of the roadbed between the tracks and the fence, and he adds:

"Along the track, a foot or two beyond the ties, it was grassy. More or less of the grass and weeds had been cut. It had not been removed after cutting. Along the length of the Brown premises there would be probably a load of it. There were places where it varied in thickness; places where there was a handful, and places where there was a forkful. It had been cut with a grass scythe. * * * I know there was a freight train passed there between ten and noon ordinarily. I have seen it set fires in July, 1893."

We are inclined to think, according to the doctrine laid down in O'Neill v. Railway Co., 115 N. Y. 579, 22 N. E. 217, and the comments made in that case by Danforth, J., that the evidence we have quoted required the question as to the defendant's negligence to be submitted to the jury. In that case it was said:

"That, conceding the escape of fire from an engine is inevitable, a railroad company is bound to remove combustible material from its path, or to prevent such an accumulation thereof by the side of its tracks as will, in consequence of fire falling upon it, endanger the property of others."

Danforth, J., after stating the rule we have just mentioned, says:

"The fire on the track was its fire as much as if confined in the engine, and it owed a like duty to see that it did no harm."

And he further observes:

"There was, moreover, in the plaintiff's case, abundant evidence of conduct on the defendant's part in so storing its useless material and retaining upon its premises brush and other refuse matter as to make it quite right and proper for the jury to declare it negligent."

That case seems to have been placed upon the general doctrine of negligence, and does not refer to section 25 of chapter 283 of the Laws of 1885, which reads as follows:

"Every railroad company whose road passes through waste or forest lands, or lands liable to be overrun by fires within this state, shall twice in each year cut and burn off or remove from its right of way, all grass, brush or other inflammable material, but under proper care, and at times when the fires thus set are not liable to spread beyond control."

Following the O'Neill Case is the case of Van Ostrand v. Railroad Co. (Sup.) 19 N. Y. Supp. 621, decided in July, 1892, by the Third department, where it was held:

"Whether a railroad, in cutting and leaving by the roadside a quantity of grass and brush exposed to the danger of fire from its passing engines is guilty of negligence, is properly a question for the jury."

In that case there was evidence to show that the defendant had previously cut the grass along the track, and also brush, which it permitted to remain in the vicinity of the track; that the brush

took fire from the sparks of a passing engine, and communicated to the plaintiff's land, and during the trial the court charged the jury:

"That if they found that such conduct on defendant's part was negligent, and that the fire was caused by reason of it, and could not otherwise have occurred, and was communicated from this pile of brush to plaintiff's lands, and did this damage, plaintiff was entitled to recover."

The court approved of the language thus used in the charge.

We are of the opinion that the trial court erred in refusing to submit the question to the jury whether the fire which was occasioned by the sparks falling upon the premises of the defendant, and communicated to the premises of the plaintiff, was caused by the negligence of the defendant, and in granting the defendant's motion for a nonsuit. The foregoing views lead us to the conclusion that a new trial should be ordered.

Judgment and order reversed, and a new trial ordered, with costs to abide the event. All concur.